# EXHIBIT A

**GS GOLDBERG SEGALLA**<sup>LLP</sup>

Joanna M. Roberto | Partner
Direct 516.281.9820 | jroberto@goldbergsegalla.com

**Via Facsimile (662) 238-7552**
**& Via US Mail**

Jonathan Masters, Esq.
Holcomb Dunbar, PA
400 South Lamar, Suite A
PO Drawer 707
Oxford, Mississippi 38655

Re:   *ADT Services v. Thomas Brady, et al.*
      Policyholder:  The Alarm Company, LLC
      Civil Action No.: 10cv02197
      Policy: CLS1503145
      Claim No.: 1497910
      GS File No.: 14002.0216

Dear Mr. Masters:

Please be advised that Scottsdale Insurance Company ("SIC") has had the opportunity to consider the referenced claim and request for coverage on behalf of Thomas Brady, Susan Brady, Lance Woods and The Alarm Company LLC (collectively referred to as "Alarm Defendants") with respect to the Action referred to above (hereinafter "Underlying Action").  Please be advised that SIC has determined that there is no coverage available for this claim.  Though we are under no obligation to do so, we will provide you with a defense to the Underlying Action; however, we will do so only until such time as a court of law determines SIC's rights and duties under the Policy.

SIC intends to file a declaratory judgment action to determine its rights and obligations under the Policy with respect to this claim. In the event a court finds that the Policy does not afford coverage for this loss, we will immediately withdraw our defense of the underlying action. SIC is providing this defense to you only as a courtesy, and this defense should in no way be construed as a waiver or relinquishment of any of SIC's rights or defenses under the policy. We will assume you consent to SIC's provision of a defense to the lawsuit as outlined above unless we hear from you to the contrary.

### Facts

The pleadings allege that in 2005, ADT commenced an action against The Alarm Company and Susan Brady in the US District Court for the Western District of Tennessee ("2005 Litigation").  The 2005 Litigation alleged Brady and The Alarm Company's exploited ADT's intellectual property and use of ADT's confidential information to steal ADT customers.  It also alleged Brady appropriated and used ADT' intellectual property to solicit and steal ADT's customers. The 2005 Litigation refers specifically to provisions within the Authorized Dealer Agreement including the non-solicitation and non-competition clauses.  The 2005 Litigation asserted claims for injunction; breach of express contract; interference with prospective business advantage; intentional interference with contract in violation of TN common law and TN code; conspiracy; unfair trade practices and/or consumer protection acts; and fraudulent conveyance.

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 2 of 13

The 2005 Litigation was dismissed with prejudice on May 28, 2008, by a Consent Order and a Mutual Compromise and Settlement Agreement ("Settlement Agreement"). The terms of the Settlement Agreement have not been provided to us since it appears that the document is confidential. To this end, we are unable to analyze the effect of the Settlement Agreement in conjunction to the Policy's coverage.

By letter dated December 1, 2009, counsel for ADT sent the Alarm Defendants a cease and desist letter cautioning that The Alarm Company was engaging in conduct contrary to the Settlement Agreement, State Law and Federal Law.

Thereafter, in 2010, the instant litigation was commenced by ADT against Thomas Brady, Susan Brady, Lance Woods, The Alarm Company, and Security Networks in the US District Court for the Western District of Tennessee ("2010 Litigation" and/or "Underlying Action"). The 2010 Litigation asserts claims for federal trademark infringement under the Lanham Act; Unfair Competition under the Lanham Act; violation of TN Consumer Protection Act; tortuous interference with contractual relationships (code and common law); and trade disparagement or trade libel.

Three years later in January 2013, ADT filed a First Amended Complaint with six (6) counts which include the same as those in the 2010 Litigation with the addition of breach of contract. The 2013 First Amended Complaint alleges that from 2007 to 2010, the Better Business Bureau of the Mid South reported 10 complaints against The Alarm Company concerning "sales practices." See Am. Cmplt. 52. In addition, the Complaint alleges specific instances of questionable sales practices in 2008 involving Eula Hicks; 2009 involving Judy Glass; and 2010 involving Alice Johnson. See Am. Cmplt. 35, 38, 44. The Amended Complaint also provides specific references to former ADT customers who reside in prohibited areas of solicitation that converted to The Alarm Company including Jerry Burcham, Lula Handy, James Harris, and Nancy Brockhagen.

The allegations in the 2013 Amended Complaint state in part that the Alarm Defendants were using ADT's registered trademarks in connection with its sale of services to mislead ADT customers into believing defendants' services are associated, affiliated or sponsored by ADT. See Am. Cmplt. 73. It is alleged that the Alarm Defendants held themselves out as employees of ADT and advised potential customers that ADT was going out of business and, in other circumstances, advised that they needed to perform an upgrade of ADT equipment, only to then remove the existing and replace it with Alarm Company equipment without consent of the customers.

The first notice SIC ever received of the claim and suit was on August 15, 2013.

### Applicable Policy Provisions

Scottsdale Insurance Company issued the following Commercial General Liability policies to its Named Insured The Alarm Company, LLC ("Policies"):

> CLS1503145 effective June 2, 2008 to June 2, 2009
> CPS1041333 effective June 2, 2009 to June 2, 2010
> CPS1201172 effective June 2, 2010 to June 2, 2011

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 3 of 13

> CPS1387284 effective June 2, 2011 to June 2, 2012
> CPS1576898 effective June 2, 2012 to June 12, 2013
> CPS1754699 effective June 2, 2013 to June 2, 2014

All of the Policies except for CPS1754699 are written on Commercial General Liability Coverage form CG 00 01 12-07. Policy number CPS1754699 is written on the 4-13 edition of the CG 00 01 12-07 coverage form; however, we have only cited language from the 12-07 edition since there are no substantive differences between the two coverage forms. The 12-07 edition provides in relevant part as follows:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .

### COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result . . .

3

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 4 of 13

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**
"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge or falsity.

c. **Material Published Prior To Policy Period**
"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period . . .

e. **Contractual Liability**
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

\*\*\*

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**
"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, the exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

4

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 5 of 13

    1.    We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend . . .

        e.    All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured . . .

**SECTION II – WHO IS AN INSURED**
1.    If you are designated in the Declarations as . . .

    c.    A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers . . .

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**
2.    **Duties In The Event Of Occurrence, Offense, Claim or Suit**

    **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
        **(1)** How, when and where the "occurrence" or offense took place;
        **(2)** The names and addresses of any injured persons and witnesses; and
        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**  If a claim is made or "suit" is brought against any insured, you must:
        **(1)** Immediately record the specifics of the    claim or "suit" and the date received; and
        **(2)** Notify us as soon as practicable.
    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

\*\*\*

    **d.**  No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**SECTION V-DEFINITIONS**
1.    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods,

5

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 6 of 13

products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement . . .

3. **"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time . . .**

13. **"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress of slogan in your "advertisement" . . .

17. **"Property damage" means:**

a. **Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**

b. **Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it . . .**

6

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 7 of 13

In addition to the main Commercial General Liability Coverage Form, your policies also include other forms or endorsements that provide for, exclude or amend coverage under the policies. Specifically, the policies include the following:

### GLS-289s (11-07)

**KNOWN INJURY OR DAMAGE EXCLUSION-PERSONAL AND ADVERTISING INJURY**

**Known Injury Or Damage**
This insurance does not apply to "personal and advertising injury" arising from an offense:

    **a.**    That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II-WHO IS AN INSURED** or an "employee" authorized by You to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

    **b.**    That occurs during the policy period and was, p rior to the policy period, known to have occurred by any insured listed under Paragraph 1.of **SECTION II-WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of **SECTION II-WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

    (1)    Reports all, or any part, of the "personal" and advertising injury" to us or any other insurer;
    (2)    Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or
    (3)    Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

UTS-74g (8-95)

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 8 of 13

**PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION**
This policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. However, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

The Policies also include coverage for Errors and Omissions pursuant to form GLS-172s (02-07) which provides:

**ERRORS AND OMISSIONS COVERAGE PART**
**SECTION 1 – COVERAGE**
1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as "damages" as a result of an "error or omission" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have not duty to defend the insured against any "suit" seeking "damages" for an "error or omission" to which this insurance does not apply. We may, at our discretion, investigate any "error or omission" and settle any "claim" or "suit" that may result. But:
   (1) The amount we will pay for "damages" is Limited as described in **LIMITS OF INSURANCE (SECTION III)**; and
   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgment of settlements.
\*\*\*
2. **Exclusions**
   This insurance does not apply to:
   a.   "Errors or omissions" for which the insured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.
\*\*\*
   d.   Injury arising out of a dishonest, fraudulent, malicious or criminal act by an insured.

**SECTION IV – COVERAGE PART CONDITIONS**

8

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 9 of 13

1. **Duties in the event of an "Error or Omission," "Claim" or "Suit"**

   a. You must see to it that we are notified as soon as practicable of an "error or omission" which may result in a "claim". To the extent possible, notice should include:

      (1) How, when and where the "error or omission" took place;

      (2) The names and addresses of any injured Persons and witnesses; and

      (3) The nature and location of any injury or damages arising out the "error or omission".

         a. If a "claim" is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

\*\*\*

**SECTION VI – DEFINITIONS**
\*\*\*

   4. "Error or omission" means any negligent act, error or omission while performing those services described in the Schedule of this Coverage Part under the Description of Services.

\*\*\*

## SIC's Coverage Position

We direct your attention to the coverage grants of the Policies set forth above. The Coverage A portion of the Policies applies to bodily injury and property damage arising from an "occurrence," which is defined as an "accident." The allegations in the 2010 Complaint allege intentional conduct, deceit, and misrepresentation; consequently, there is no coverage under Coverage A because there are no allegations of "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in the Policies.

9

Case 2:14-cv-02636-RHC-tmp   Document 1-1   Filed 08/15/14   Page 11 of 14
                                    PageID 28

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 10 of 13

Notice of the claim and suit which appears to have its' genesis dating back to a litigation commenced in 2005, was first provided to SIC on August 15, 2013. This notice is three (3) years after the initial Complaint was filed in the Underlying Action; and 8 months after the First Amended Complaint was filed. As such, notice was untimely and the Conditions provisions requiring notice as soon as practicable have been breached. SIC reserves the right to seek a judicial declaration on the issue of notice.

To the extent that Lance Woods is neither a member nor manager of The Alarm Company, LLC, and his alleged liability does not arise from the conduct of his business or duties, he would not qualify as an Insured. SIC reserves its right to disclaim coverage on this ground.

To the extent Plaintiff's damages arise out of the breach of the Settlement Agreement, there would be no coverage as the Settlement Agreement was executed two months before your first Scottsdale policy incepted. In addition, the Policies do not provide coverage for breach of contract. SIC reserves its right to disclaim coverage based upon the terms and application of the Settlement Agreement.

We also direct your attention to the punitive damage exclusion set forth above. To the extent the complaint seeks punitive, treble, and statutory damages, coverage is unavailable based on the exclusion. Additionally, Plaintiff seeks recovery of its' attorneys' fees and costs. Please note that section "e" of the Supplementary Payments provision to Coverages A and B specifically excludes coverage for attorneys' fees or expenses.

Similarly, to the extent injunctive relief does not arise out of an occurrence, constitute "bodily injury," "property damage", "personal and advertising injury" or "errors or omissions" coverage is unavailable.

To the extent that Coverage B has been implicated for personal and advertising injury, Exclusion a. excludes coverage for injury caused with knowledge that the act would violate the rights of another. To the extent that the complaint alleges injury caused by or made at the direction of the Alarm Defendants with knowledge it would violate the rights of ADT, SIC disclaims coverage.

We direct your attention to Exclusion b., which excludes coverage for injury arising out of falsely published material. To the extent that the complaint seeks damage arising out of the Alarm Defendants' oral or written materials that were made with knowledge of its falsity, there would be no coverage. SIC reserves its right to disclaim based on Exclusion b.

We further direct your attention to Exclusion c., which excludes injury arising out of material published before the beginning of the policy period. To the extent the complaint seeks injury or damages for oral or written publications made before June 2, 2008, there would be no coverage. As such, SIC reserves its right to disclaim coverage based on Exclusion c.

We also direct your attention to Exclusion e., which excludes coverage for liability assumed in a contract or agreement. To the extent, the complaint seeks damages related to an agreement involving the Alarm Defendants, SIC reserves its right to disclaim coverage based on Exclusion e.

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 11 of 13

Exclusion f. bars coverage for injury arising out of a breach of contract. To the extent that the complaint seeks damages arising from a breach of a contract with the Alarm Defendants, there would be no coverage.

Exclusion i. provides there is no coverage for injury arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. To the extent the complaint seeks damages for infringement of ADT's other intellectual property, SIC reserves the right to disclaim coverage based upon Exclusion i.

Also relevant to Coverage B, the Policies contain a Known Injury or Damage Exclusion endorsement which bars coverage for personal and advertising injury occurring during the policy period if the insured knew prior to the policy period that the injury occurred. In this instance, the continuation of the offense alleged by ADT during or after the policy period will be deemed to have been known prior. SIC reserves the right to disclaim coverage for any injury that occurred during the policy period and was known by the Alarm Defendants to have occurred prior to the policy period.

In order for the Errors & Omissions portion of the Policy to apply, there must have been a negligent act, error or omission while performing services. To the extent the complaint alleges and seeks recovery for intentional acts only and does not allege any negligence on behalf of the Alarm Defendants, there would be no coverage.

Additionally, Exclusion a. of the Errors & Omissions Coverage Form excludes coverage for damages relating to liability assumed in a contract or agreement. To extent the complaint alleges damages by reason of contractual liability assumed by the Alarm Defendants, SIC reserves the right to disclaim coverage.

Exclusion d. of the Errors & Omissions Coverage Form excludes coverage for injury arising out of a dishonest, fraudulent, malicious or criminal act. To the extent the complaint alleges injury arising out of this conduct by any insured, there would be no coverage.

Please also note that the Policies provide coverage only for damage and/or injuries occurring within the respective policy periods. To the extent that alleged damage/injuries occurred outside an applicable policy period, coverage would be unavailable.

Accordingly, on the grounds referenced above, as well as others that are not presently known to us or may become known to us in the future, SIC reserves the right to deny coverage, including defense and indemnity, and reserves the right to withdraw the defense provided for in this letter. SIC specifically advises that it reserves the right to litigate the issue of policy coverage of the Alarm Defendants. This reservation of right to litigate coverage extends from the date of this letter to any time after there has been an adverse judgment in the Underlying Action.

It is our understanding that your firm has previously been appointed to represent the Alarm Defendants. SIC consents to Holcomb Dunbar, PA as counsel subject to the terms of its' Policies and reservation of rights regarding allocation. SIC will pay only reasonable attorneys fees. SIC

11

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 12 of 13

reserves the right to seek reimbursement from the Alarm Defendants for counsel fees and costs incurred by SIC if it is determined the subject claims are not within Policy coverage.

This letter in no way constitutes, nor should it be considered, a relinquishment by SIC of any and all other rights or defenses available to it under the terms and conditions of its insurance contract and neither anything in this letter nor any act of SIC is to be considered a waiver of any known or unknown defenses. SIC reserves the right to rely upon any additional defenses as they become known.

If you have not already done so, we also urge you to immediately forward the complaint to any and all other insurance companies under whose policy(ies) you were or might have been insured, and seek defense and indemnification from them. Please forward to me copies of any correspondence you receive from any such insurers in response to your request for coverage from them.

Should you wish to provide us with any additional information which you deem relevant to your request for coverage, or which you feel impacts on the position that SIC has taken with respect to coverage, SIC will promptly review and consider such materials. If you have any questions concerning any of the foregoing, please do not hesitate to contact the undersigned.

Very truly yours,

Joanna M. Roberto

/JMR

Case 2:14-cv-02636-RHC-tmp    Document 1-1    Filed 08/15/14    Page 14 of 14
                                    PageID 31

Jonathan Masters, Esq.
Holcomb Dunbar, PA
September 10, 2013
Page 13 of 13

bcc: Carol Broerman
    Scottsdale Insurance Company
    (Via E-Mail: **BROERMC@Scottsdaleins.com**)

    Mark Garrison
    Scottsdale Insurance Company
    (Via E-Mail: GARRISM5@scottsdaleins.com)

195021.1