IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

SCOTTSDALE INSURANCE COMPANY,

    Plaintiff,

v.                                                                                                              No. _____

THE ALARM COMPANY, LLC,
THOMAS BRADY,
SUSAN BRADY, AND
LANCE WOODS

    Defendants.

---

### COMPLAINT FOR DECLARATORY JUDGMENT

---

Comes now Scottsdale Insurance Company ("Scottsdale") and brings its complaint for declaratory judgment as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Scottsdale is a corporation organized under the laws of the State of Ohio with its principal place of business in Scottsdale, Arizona. Scottsdale is licensed to and issues insurance policies in Tennessee.

2.    Defendant The Alarm Company, LLC (" The Alarm Company" or the "Insured"), is a limited liability company organized under the laws of the State of Tennessee, with its principal place of business in Shelby County, Tennessee. Scottsdale issued certain policies of insurance naming The Alarm Company as an insured, as described below.

3.    Defendant Thomas Brady is an individual who, upon information and belief, is a resident of Shelby County, Tennessee.

4. Defendant Susan Brady is an individual who, upon information and belief, is a resident of Shelby County, Tennessee.

5. Defendant Lance Woods is an individual who, upon information and belief, is a resident of Shelby County, Tennessee.

6. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. § 57.

7. There is an actual controversy between the parties with regard to whether Scottsdale owes Defendants a duty to provide a defense and indemnity with respect to claims asserted against Defendants in a case pending in the United States District Court for the Western District of Tennessee, styled *ADT Services AG and ADT Security Services, Inc. v. Thomas Brady, Susan Brady, Lance Woods and The Alarm Company, LLC,* Dkt. No. 2:10-cv-02197-RHC-tmp (the "Underlying Action").

8. The Alarm Company, Thomas Brady, Susan Brady, and Lance Woods demanded defense and indemnity from Scottsdale with respect to the claims made in the Underlying Action. Scottsdale agreed to provide a defense under a reservation of rights and informed Defendants that it was reserving its right to seek declaration regarding its obligations, among other things. A copy of the September 10, 2013 reservation of rights letter is attached as Exhibit A.

9. The Court has subject matter jurisdiction in accordance with 28 U.S.C. 1332(a) as this action is an action between citizens of different states and, upon information and belief, the amount in controversy exceeds $75,000.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the individual defendants reside in the Western District of Tennessee, The Alarm Company has

its principal place of business in the Western District of Tennessee, and the insurance policies, described below, were delivered to the insured in this district.

## FACTS

**A.     The Policies**

11.     Scottsdale issued Policy No. CLS1503145 covering the period from June 2, 2008 to June 2, 2009 (the "2009 Policy").  The named insured under the 2009 policy is The Alarm Company.  A copy of the 2009 Policy is attached as Exhibit B.

12.     Scottsdale issued Policy No. CPS104133 covering the period from June 2, 2009 to June 2, 2010 (the "2010 Policy").  The named insured under the 2010 policy is The Alarm Company.  A copy of the 2010 Policy is attached as Exhibit C.

13.     Scottsdale issued Policy No. CPS1201172 covering the period from June 2, 2010 to June 2, 2011 (the "2011 Policy").  The named insured under the 2011 policy is The Alarm Company d/b/a Alarm Services Group.  A copy of the 2011 Policy is attached as Exhibit D.

14.     Scottsdale issued Policy No. CPS1387284 covering the period from June 2, 2011 to June 2, 2012 (the "2012 Policy").  The named insured under the 2012 policy is The Alarm Company d/b/a Alarm Services Group.  A copy of the 2012 Policy is attached as Exhibit E.

15.     Scottsdale issued Policy No. CPS1576898 covering the period from June 2, 2012 to June 2, 2013 (the "2013 Policy").  The named insured under the 2013 policy is The Alarm Company d/b/a Alarm Services Group.  A copy of the 2013 Policy is attached as Exhibit F.

16.     Scottsdale issued Policy No. CPS1754699 covering the period from June 2, 2013 to June 2, 2014 (the "2014 Policy").  The named insured under the 2014 policy is The Alarm Company d/b/a Alarm Services Group.  The 2014 Policy was cancelled effective March 7, 2014.  A copy of the 2014 Policy is attached as Exhibit G.

17. The six separate policies referenced above, which are attached hereto and incorporated herein by reference, differ slightly. To the extent any language quoted within the body of the Complaint differs from the actual policy language, the Plaintiff relies on the actual policy language.

18. Coverage A of the 2009 policy, 2010 policy, 2011 policy, 2012 policy, 2013 policy, and 2014 policy (collectively, the "Policies") provides that Scottsdale has the duty to defend the insured against suit seeking damages because of "bodily injury" or "property damage" (as those terms are defined in the Policies) to which the insurance applies.

19. Coverage B of the Policies provides that Scottsdale has the duty to defend the insured against any suits seeking damages because of "personal and advertising injury" (as that term is defined in the Policies), to which the insurance applies.

20. The Errors and Omissions coverage part of the Policies provides that Scottsdale has the duty to defend the Insured against any suit seeking damages as a result of an "error or omission" (as that term is defined in the Policies) to which the insurance applies.

21. Scottsdale does not have a duty to defend the insured against any suit seeking damages to which the insurance does not apply.

22. The Policies are subject to certain terms, conditions, limitations, exclusions, and endorsements as set forth in the Policies.

23. Scottsdale seeks a declaration that it does not have an obligation to defend or indemnify Defendants in the Underlying Action.

**B.      The Allegations in the Underlying Action**

24. On March 22, 2010, ADT Services AG and ADT Security Services, Inc. (collectively, "ADT") initiated the Underlying Action. In the Complaint, ADT asserted claims

for federal trademark infringement under the Lanham Act (Count I), unfair competition under the Lanham Act (Count II), violation of the Tennessee Consumer Protection Act (Count III), tortuous interference with contractual relationships (both statutory and under Tennessee Common Law (Count IV)), and trade disparagement or trade libel (Count V).

25. On January 29, 2013, ADT filed its First Amended Complaint to add a claim for breach of contract (Count VI). A copy of the First Amended Complaint, with exhibits, is attached as Exhibit H.

26. The Defendants in the Underlying Action and in this case are identical.

27. Whether a duty to defend arises is determined by examining the Policies and the allegations contained in the First Amended Complaint.

28. ADT alleges that it is the largest provider of electronic security services in the United Sates and provides security services for homes and businesses around the country, including Tennessee. *See* Ex. H, First Am. Compl. at ¶¶ 11 - 12.

29. ADT alleges that it owns numerous federal registrations and common law rights to ADT registered trademarks in the United States. *See* Ex. H, First Am. Compl. at ¶ 13.

30. ADT alleges that that The Alarm Company is owned and controlled by Susan Brady, is controlled by Thomas Brady, and that Lance Woods is an employee of The Alarm Company. *See* Ex. H, First Am. Compl. at ¶¶ 15 and 6.

31. ADT alleges that that it executed an Authorized Dealer Agreement with a company named Crime Prevention, Inc. and defendant Thomas Brady, was the owner and sole officer of Crime Prevention, Inc. ADT alleges that it terminated the agreement because Thomas Brady verbally threatened an ADT manager. *See* Ex. H, First Am. Compl. at ¶ 20.

32.     ADT alleges that that after termination of the dealer relationship, ADT sued Crime Prevention, Inc. in Colorado and a judgment was entered in favor of ADT in an amount exceeding $200,000; thereafter, Thomas Brady filed for protection under Chapter 7 of the United States bankruptcy laws.  *See* Ex. H, First Am. Compl. at ¶¶ 21 - 23.

33.     ADT alleges that within a month of ADT's termination of Crime Prevention, Inc. and Thomas Brady as an authorized dealer, Susan Brady incorporated The Alarm Company for the purpose of continuing the business of Crime Prevention, Inc. and shielding Thomas Brady from creditors, including ADT.  ADT alleges that The Alarm Company took over the offices, telephone number, bank, computer software, personnel, and most customer accounts of Crime Prevention, Inc. *See* Ex. H, First Am. Compl. at ¶¶ 25 - 27.

34.     In 2005, ADT again filed suit against Susan Brady and The Alarm Company as successors in interest to Crime Prevention, Inc., alleging that The Alarm Company used ADT's intellectual property and engaged in deceitful and misleading business practices to solicit ADT's subscribers to breach their contracts with ADT.  *See* Ex. H, First Am. Compl. at ¶¶ 28 - 29.

35.     ADT made allegations in the 2005 litigation that Thomas Brady and The Alarm Company approached ADT customers and continued to represent themselves as affiliated with ADT when they were not, induced ADT customers to cancel their ADT contracts, and made false statements about ADT. *See* Ex. H, First Am. Compl. at ¶ 31.

36.     ADT alleges that in April in 2008, ADT, The Alarm Company, and Susan Brady entered into a settlement agreement regarding the 2005 litigation which, among other things, limited The Alarm Company, Thomas Brady and Susan Brady's ability to solicit ADT's customers within a certain geographic region.  *See* Ex. H, First Am. Compl. at ¶ 33.

37. ADT alleges that after the parties entered into the settlement agreement, The Alarm Company engaged in deceptive conduct, made representations to ADT customers that were false, approached ADT's customers under false pretenses, and "tricked" customers into switching their alarm services. *See* Ex. H, First Am. Compl. at ¶¶ 35 - 43.

38. ADT alleges that The Alarm Company has an "F" rating with the Better Business Bureau, that that Better Business Bureau has received twenty-two complaints against the company, and that the majority of the complaints relate to deceptive, misleading, and high pressure sales tactics. *See* Ex. H, First Am. Compl. at ¶¶ 50 - 52.

39. ADT alleges that The Alarm Company engages in a "number of unlawful tactics," including making "fraudulent or misleading statements," telling "outright lies," and using "intimidation" to force ADT customers to transfer their contracts to The Alarm Company, *See* Ex. H, First Am. Compl. at ¶ 54.

40. ADT alleges that Defendants gain entry to an ADT's customer's home by suggesting that they are ADT employees. *See* Ex. H, First Am. Compl. at ¶ 55.

41. ADT alleges that Defendants have mislead ADT customers in Tennessee and provided false statements to ADT customers misinforming them that:

   a. is out of business;

   b. ADT is no longer providing security services;

   c. They need to switch their business because The Alarm Company is taking over ADT's customer accounts;

   d. ADT is cancelling their contracts;

   e. ADT is canceling their monitoring services;

   f. There is a relationship between ADT and The Alarm Company;

   g. ADT has gone out of business and that The Alarm Company is its successor; and

7

    h.  They have to switch their business to The Alarm Company.

*See* Ex. H, First Am. Compl. at ¶¶ 54 - 56.

    42.  ADT alleges that Defendants engaged in a "systemic, unlawful scheme of luring ADT customers away from ADT through lies, intimidation, unlawful business practices and deceit." *See* Ex. H, First Am. Compl. at ¶ 59.

    43.  ADT characterizes Defendants' conduct as "fraudulent, malicious and oppressive."  *See* Ex. H, First Am. Compl. at ¶ 62.

    44.  ADT also alleges that The Alarm Company breached the settlement agreement reached in the 2005 litigation.

    45.  A complete recital of ADT's allegations against Defendants are contained in the First Amended Complaint attached as Exhibit H.

## REQUEST FOR DECLARATORY RELIEF

## COUNT I

### No Duty to Defend Under Coverage A

    46.  Scottsdale incorporates paragraphs 1 through 45 as if fully set forth herein by reference.

    47.  The Policies contain a Commercial General Liability ("CGL") part.

    48.  The insuring agreement of Coverage A – Bodily Injury and Property Damage portion of the CGL part of the Policies provides coverage for the following:

    1.  Insuring Agreement.

        a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
. . . .

      b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

49. An "occurrence" is defined as an "accident" under the Policies.

50. Paragraphs 1 through 69 of the First Amended Complaint contain allegations regarding the parties, jurisdiction, venue, and relevant facts. No negligence is alleged in those paragraphs.

51. The words "negligent" and "negligence" are not found within the First Amended Complaint.

52. Instead, ADT's allegations describe a course of intentional and willful conduct engaged in by Defendants that caused Plaintiffs' harm.

53. In Count I of the First Amended Complaint, ADT brings a claim for federal trademark infringement under the Lanham Act. *See* Ex. H, First Am. Compl. at ¶¶ 70 - 76. Within this count, ADT characterizes Defendants' conduct as "willful and undertaken with the intent of deceiving potential and/or present ADT customers." *Id.* at ¶ 76. There can be no "occurrence" if Defendants' acts were willful, because willful acts cannot result in an "accident"

as those terms are defined in the Policies. ADT does not allege damages that are within the risk covered by the insurance contract with respect to the Lanham Act claim, and therefore neither the duty to defend nor the duty to indemnify is triggered.

54. In Count II, ADT brings a claim for unfair competition under the Lanham Act. *See* Ex. H, First Am. Compl. at ¶¶ 77 - 85. ADT characterizes Defendants' acts as "willful, deliberate, false, and misleading representations of fact as to the nature and characteristic of Defendants' services . . . ." *See* Ex. H, First Am. Compl. at ¶ 84. Because ADT alleges that the Defendants' acts are willful and deliberate with respect to the Lanham Act violation, the damages arising from the acts are not within the covered risk because there is no "occurrence" as defined in the Policies and thus there is no duty to defend or indemnify.

55. In Count III, ADT brings a claim for violation of Tennessee Consumer Protection Act. *See* Ex. H, First Am. Compl. at ¶¶ 86 - 94. ADT characterizes Defendants' conduct as a "willful and knowing intent to deceive and confuse customers." *See* Ex. H, First Am. Compl. at ¶ 93. Any damages recoverable for violation of the Tennessee Consumer Protection Act would be based on willful and knowing conduct, which are not damages that are within the covered risk, and thus no duty to defend or indemnify is triggered.

56. In Count IV, ADT alleges that Defendants tortuously interfered with its contractual relationships under Tenn. Code Ann. § 47-50-109 and Tennessee common law. *See* Ex. H, First Am. Compl. at ¶¶ 95 - 102. ADT alleges that Defendants had knowledge of the existence of ADT's contracts with its customers and engaged in "intentional acts" to induce those customers to breach their contracts with ADT. *See* Ex. H, First Am. Compl. at ¶¶ 97 - 99. Damages flowing from intentional conduct would not be damages within the covered risk because they are not caused by an "occurrence" as that term is defined in the Policies, and thus

there is no duty to defend or indemnify.  In addition, a claim for tortious interference with contract requires proof that the wrongdoer acted maliciously.  Therefore, any damages awarded on the tortious interference claims must be based on a finding that Defendants acted maliciously.  Damages flowing from malicious conduct would not be covered under the Policies, because there is no "occurrence" as that term is defined in the Policies, and thus no duty to defend or indemnify is triggered.

57.  In Count V, ADT brings a claim for trade disparagement or trade liable under Tennessee common law.  *See* Ex. H, First Am. Compl. at ¶¶ 103 - 108.  ADT predicates its claims on allegations that Defendants' sales activities contained statements about ADT's services that were false and misleading.  *See* Ex. H, First Am. Compl. at ¶¶ at 104 - 105.  ADT also alleges that Defendants acted with knowledge that the statements were false.  *See Ex. H,* First Am. Compl. at ¶¶ 54, 56, 57, 59, 78, 79, and 84.  Therefore, no duty to defend or indemnify is triggered under the Policies.

58.  In Count VI, ADT brings a claim for breach of contract.  *See* Ex. H, First Am. Compl. at ¶¶ 109 - 117.  ADT alleges that Defendants breached the Settlement Agreement "by using misrepresentations and utilizing other deceitful and misleading practices to solicit ADT customers."  *See* Ex. H, First Am. Compl. at ¶ 114.  Based on this allegation, there is no duty to defend or indemnify because ADT alleges that Defendants' acts are intentional.  In addition, the Policies do not insure against damages caused by the Insured's assumption of liability in a contract or agreement.  To the extent that damages are sought for breach of contract, there is no duty to defend or indemnify.

11

## COUNT II

### No Duty to Defend or Indemnify under Coverage B

59. Scottsdale incorporates paragraphs 1 through 58 as if fully set forth herein.

60. The Coverage B part of the CGL portion of the Policies provides for coverage for "personal and advertising injury" as that term is defined in the Policies.

61. There is no duty to defend or indemnify under Coverage B because Coverage B does not apply to injury caused with knowledge that an act would violate the rights of another. The First Amended Complaint is replete with allegations that Defendants' conduct was willful.

62. There is no duty to defend or indemnify because the Policies exclude coverage for injury arising out of statements if they were made by the Insured with knowledge of their falsity. ADT repeatedly alleges that Defendants were aware of the falsity of the statements at the time they were made.

63. There is no duty to defend or indemnify because the Policies exclude coverage for material published prior to the policy period. To the extent ADT seeks damages for oral or written publications made prior to June 2, 2008, no duty to defend would be triggered by those allegations and there would be no indemnity obligation for damages awarded in connection with those claims.

64. Coverage B excludes coverage for personal and advertising injury for which the Insured assumed liability in a contract or arising out of a breach of contract. To the extent ADT seeks damages for breach of contract (Count VI of the First Amended Complaint), no duty to defend would be triggered by those allegations and there would be no indemnity obligations for damages awarded in connection with that claim.

65. Coverage B excludes coverage for personal and advertising injury arising out of the infringement of copyright, patent, trademark, trade secret, or other intellectual property rights. This provision excludes coverage for damages for trademark infringement under the Lanham Act (Count I). Thus, no duty to defend would be triggered by those allegations and there would be no indemnity obligation for damages awarded in connection with that claim.

66. Coverage B precludes coverage for personal and advertising injury that occurs during a policy period if, prior to the policy period, the Insured knew that such an injury had occurred, in whole or in part. To the extent that ADT seeks damages for injuries occurring prior to June 2, 2008, and injuries that continued after that date, the duty to defend is not triggered and there is no indemnity obligation for damages awarded for such claims.

## COUNT III

### No Duty to Defend or Indemnify under Errors and Omissions Coverage

67. Scottsdale incorporates paragraphs 1 through 66 as if fully set forth.

68. The insuring agreement for the Errors and Omission part of the Policies states that Scottsdale will pay the sums that the Insured becomes legally obligated to pay as damages as a result of an "error or omission" (as that term is defined by the Policies) to which the insurance applies.

69. An "error or omission" is defined, in part, by the Policies to mean any "negligent act, error or omission . . . ."

70. ADT does not use the word "negligent" in the First Amended Complaint and makes numerous allegations of intentional and willful conduct engaged in by the Defendants. Based on the allegations of the First Amended Complaint, there is no duty to defend or indemnify the Defendants under the Errors and Omissions part of the Policies.

13

71.     To the extent that the Insured or an employee who was authorized to give or receive notice of an occurrence or claim knew that damages had occurred, in whole or in part, prior to June 2, 2008, any continuation of such damages during or after the policy periods would not be covered by the Errors and Omissions part of the Policies.  No duty to defend would be triggered by those allegations and no indemnity obligation would arise with respect to damages awarded from claims based on those allegations.

72.     The Errors and Omissions part does not apply to errors or omissions for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  Thus, there is no coverage for damages arising from breach of contract, no duty to defend a breach of contract claim, and no indemnity for damages awarded for breach of contract.

73.     The Errors and Omissions coverage does not apply to injury arising out of dishonest, fraudulent, or malicious acts by the Insured.  In Count I, ADT alleges that Defendants' acts were undertaken with the intent of deceiving potential customers.  *See* Ex. H, First Am. Compl. at ¶ 76.  In Count II, ADT alleges that Defendants' acts constituted willful, deliberate, false and misleading representations of fact.  *See* Ex. H, First Am. Compl. at ¶ 84.  In Count III, Plaintiffs allege that Defendants' conduct was a willful and knowing attempt to deceive and confuse customers.  *See* Ex. H, First Am. Compl. at ¶ 93.  In Count IV, Plaintiffs allege that Defendants made misrepresentations to ADT's customers to induce them to breach their contracts with ADT at a time when Defendants had knowledge of the existence of ADT's security monitoring service contracts with those customers.  *See* Ex. H, First Am. Compl. at ¶¶ 97, 99.  Thus, there is no duty to defend with respect to these claims, and no indemnity obligation with respect to damages awarded with respect to these claims.

14

## COUNT VI

### No Coverage for Certain Damages Sought

74. Scottsdale incorporates paragraphs 1 through 73 as if fully set forth herein.

75. In its prayer for relief, ADT seeks an injunction as well as punitive, liquidated, and treble damages, and attorneys' fees.

76. Injunctive relief is not damages for "bodily injury," "property damage," "personal and advertising injury" or an "error and omission" as those terms are defined in the Policies and therefore there is no indemnity obligation with respect to an award of injunctive relief.

77. Under Coverage A, Coverage B, and the Errors and Omissions part, Scottsdale agreed, subject to certain conditions and limitations, that it would "pay those sums that the insured becomes legally obligated to pay as damages. . . ." Injunctive relief requested does not require payment by the Insured. Therefore, there is no indemnity obligation with respect to an award for injunctive relief.

78. The polices contain an exclusion for punitive and exemplary damages, and damages awarded pursuant to statute in the form of double, treble, or other multiple damages in excess of compensatory damages. Scottsdale does not have an indemnification obligation with respect to these types of damages.

79. Liquidated damages resulting from breach of contract are not covered by the Policies, and there is no indemnity obligation for liquidated damages.

80. There is no indemnity obligation for attorneys' fees awarded to an opposing party under the Policies.

15

## COUNT VII

### Failure to Give Proper Notice

81. Scottsdale incorporates paragraphs 1 through 80 as if fully set forth herein.

82. The Policies provide that the Insured must give notice "as soon practicable" of an "occurrence or offense" or "error or omission" that may result in a claim.

83. On December 1, 2009, ADT sent Susan and Thomas Brady a cease and desist letter stating that ADT had learned that The Alarm Company had engaged in conduct that may not be in conformity with the terms of the settlement agreement and/or state and federal law. ADT stated that if it learned that Thomas Brady, Susan Brady, or The Alarm Company had violated any provisions of the settlement agreement, it would not provide them with further notice, but instead would immediately initiate legal proceedings.  *See* Ex. I to Ex. H, First Am. Compl.

84. On March 22, 2010, Plaintiffs filed the Underlying Action against the Defendants asserting claims for federal trademark infringement under the Landam Act (Count I), unfair competition under the Landam Act (Count II), violation of the Tennessee Consumer Protection Act (Count III), tortious interference with contractual relationships (Count IV), trade disparagement or trade liable (Count V).

85. On January 29, 2013, Plaintiffs filed the First Amended Complaint which added a claim for breach of contract (Count VI).

86. Scottsdale first received notice of the claim on August 15, 2013.

87. There was an approximately four and a half year delay between the time that Susan and Thomas Brady and The Alarm Company first learned of the potential claims and the time that notice was provided to Scottsdale.

88. There was an approximately three year and five month delay between the time of initiation of the Underlying Action and giving notice of the claims.

89. The Insured did not give notice "as soon as practical" of the claims at issue, which is required by the Policies.

90. Upon information and belief, Scottsdale has been prejudiced by the delay.

91. As a result, Scottsdale does not have a duty to defend or indemnify under the Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Scottsdale prays that the Court:

(a) Enter a declaratory judgment that Scottsdale has no obligation to provide a defense for Defendants in the Underlying Action;

(b) Enter a declaratory judgment that Scottsdale has no obligation to indemnify Defendants with respect to any claims made or awards or judgments entered in the Underlying Action; and

(c) Such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Shea Sisk Wellford
Shea Sisk Wellford (TN B.P.R. No. 16947)
Martin, Tate, Morrow & Marston, P.C.
6410 Poplar Avenue, Suite 1000
Memphis, TN  38119-4839
Telephone:  (901) 522-9000
Facsimile:  (901) 527-3746
sheawellford@martintate.com

*Attorneys for Plaintiff*