That IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

SCOTTSDALE INSURANCE COMPANY,

    Plaintiff,

v.                                                                         No. 2:14-cv-02636-RHC-tmp

THE ALARM COMPANY, LLC,
THOMAS BRADY,
SUSAN BRADY, AND
LANCE WOODS

    Defendants.
_____

**SCOTTSDALE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**
_____

Comes now Scottsdale Insurance Company ("Scottsdale") and submits this memorandum in support of its motion for summary judgment as follows:

**A.  Introduction**

Scottsdale seeks a declaratory judgment regarding whether it owes Defendants a duty to provide a defense and indemnity in connection with claims asserted in *ADT Services AG and ADT Security Services, Inc. v. Thomas Brady, Susan Brady, Lance Woods, and The Alarm Company, LLC,* United States District Court, Western District of Tennessee, Dkt. No. 2:10-cv-02197-RHC-tmp (the "Underlying Litigation"). Defendants ultimately settled the Underlying Litigation just prior to trial. Defendants claim that Scottsdale owes them costs of defense and indemnity with respect to amounts paid under the settlement agreement.

**B.     The Policies**

Scottsdale issued certain policies of insurance to The Alarm Company, LLC, including: Policy No. CLS1503145, covering the period from June 2, 2008 to June 2, 2009 (the "2009 Policy"), SOF[1] 1; Policy No. CPS104133, covering the period from June 2, 2009 to June 2, 2010 (the "2010 Policy"), SOF 2; Policy No. CPS1201172, covering the period from June 2, 2010 to June 2, 2011 (the "2011 Policy"), SOF 3; Policy No. CPS1387284, covering the period from June 2, 2011 to June 2, 2012 (the "2012 Policy"), SOF 4; Policy No. CPS1576898, covering the period from June 2, 2012 to June 2, 2013 (the "2013 Policy"), SOF 5; and Policy No. CPS1754699, covering the period from June 2, 2013 to June 2, 2014, which was cancelled effective March 7, 2014 (the "2014 Policy"), SOF 6, (collectively, the "Policies"). The language of the six Policies[2] differ slightly. *See* SOF 1-6 and Exhibits A-F. For purposes of simplicity, Scottsdale cites the language of the 2013 Policy in this memorandum; however, to the extent any language quoted differs from the applicable policy language, Scottsdale relies on the applicable policy language.

**C.     Summary Judgment Standard**

A party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As long as the movant has met its initial burden of demonstrating the absence of a genuine issue of material fact and the nonmoving party is unable to make such a showing, summary judgment is

---

[1]     "SOF" refers to the numbered paragraph of Scottsdale's Statement of Undisputed Facts filed contemporaneously herewith.

[2]     By referencing all six Policies, Scottsdale does not admit that they cover applicable time periods; however, for purposes of summary judgment, distinctions with respect to the coverage periods are immaterial.

2

appropriate. *Boynton v. Headwaters, Inc.*, 737 F. Supp. 2d 925, 929 (W.D. Tenn. 2010). A dispute about a material fact is genuine only if "a reasonable jury could return a verdict for the nonmoving party." *Grice v. Jackson-Madison Cnty. Hosp. Dist.*, 981 F. Supp. 2d 719, 723 (W.D. Tenn. 2013) (quoting *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, the court must determine "whether the evidence presents a sufficient factual disagreement to require submission of the case to a jury, or whether the evidence is so one-sided that moving party should prevail as a matter of law." *Payne v. Novartis Pharmaceuticals Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Liberty Lobby, Inc.*, 477 U.S. at 251-52).

Because the determination of whether a duty to defend exists is based on the allegations of the complaint and the policy at issue, it is appropriate for summary judgment. "The scope of insurance coverage and the insurer's duty to defend present questions of law that are particularly appropriate for summary judgment." *Am. Cas. Co. v. AmSouth Bank*, No. 00-1338, 2002 WL 139723 at *1 (W.D. Tenn. Mar. 11, 2002); *Am. Western Home Ins. Co. v. Lovedy*, No. 4:06-cv-8, 2006 WL 3740874 at *3 (E.D. Tenn. Dec. 6, 2006) (stating that treating a motion under Rule 12(c) as one for summary judgment was "consistent with Tennessee law which provides that issues involving coverage under an insurance policy present a question of law amenable to resolution by summary judgment"); *Nationwide Mut. Fire Ins. Co. v. Royall*, 588 F.Supp. 1306, 1310 (M.P. Fla. 2008) (finding that summary judgment is generally appropriate when determining whether there is a duty to defend).

**D.     The Duty to Defend**

Under Tennessee law, an insurer's duty to defend is determined by looking solely to the allegations of the complaint and the policy at issue. *See, Travelers Indem. Co. v. Moore &*

3

*Assoc.*, 216 S.W. 3d 302, 305 (Tenn. 2007). An insurer has a duty to defend if the plaintiff alleges "damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery." *Id.*

In the First Amended Complaint, ADT asserted claims for Trademark Infringement under the Lanham Act (Count I), Unfair Competition under the Lanham Act (Count II), Violation of the Tennessee Consumer Protection Act (Count III), Tortuous Interference with Contractual Relationships (both statutory and under Tennessee common law (Count IV)), Trade Disparagement or Trade Libel (Count V), and Breach of Contract (Count VI). SOF 8 and Ex. H. ADT bases its claims on Defendants' intentionally wrongful conduct and the intended consequences of that conduct. The First Amended Complaint is replete with allegations of Defendants' intentional, willful, and malicious conduct, and ADT makes abundant use of words connoting intentionally bad behavior, such as "false" (used 18 times), "misleading" (used 15 times), "misrepresentation" (used 4 times), "deceive" (used 4 times), "deceptive" (used 4 times), "unlawful" (used 11 times), "willful" (used 4 times), "fraudulent" (used 4 times), "lies" (used twice), "malicious" (used twice), "intentional" (used 3 times), and "tortious" (used 3 times). SOF 8 and Ex. H. The word "negligent" and "negligence" are not used once. *Id.* This is significant because the Policies do not provide coverage for damages that would foreseeably result from intentionally wrongful conduct.

At the beginning of the First Amended Complaint, ADT sets out allegations regarding its business:

- ADT is the largest provider of electronic security services in the United Sates and provides security services for homes and businesses around the country, including Tennessee. SOF 11-12.

- ADT owns numerous federal registrations and common law rights to ADT registered trademarks in the United States. SOF 13.

4

ADT then made allegations regarding the business history between ADT and Defendants and the previous litigation between them:

- ADT executed an Authorized Dealer Agreement with a company named Crime Prevention, Inc.  SOF 19.  Defendant Thomas Brady was the owner and sole officer of Crime Prevention, Inc.  SOF 19.

- ADT terminated the agreement because Defendant Thomas Brady verbally threatened an ADT manager.  SOF 20.

- After termination of the dealer relationship, ADT sued Crime Prevention, Inc. in Colorado and a judgment was entered in favor of ADT in an amount exceeding $200,000 (the "Colorado Litigation"); thereafter, Thomas Brady filed for protection under Chapter 7 of the United States bankruptcy laws.  SOF 21-23.

- Within a month of ADT's termination of Crime Prevention, Inc. and Thomas Brady as an authorized dealer, Susan Brady incorporated The Alarm Company for the purpose of continuing the business of Crime Prevention, Inc. and shielding Thomas Brady from creditors, including ADT.  SOF 25.

- The Alarm Company is owned by Susan Brady, controlled by Susan Brady and Thomas Brady, and employs Lance Woods.  SOF 15, 33.

- The Alarm Company took over the offices, telephone number, bank, computer software, personnel, and most customer accounts of Crime Prevention, Inc.  SOF 27.

- In 2005, ADT again filed suit in the United States District Court for the Western District of Tennessee (the "2005 Litigation"), alleging that The Alarm Company, as successor in interest to Crime Prevention, Inc., used ADT's intellectual property and engaged in deceitful and misleading business practices to solicit ADT's customers to breach their contracts with ADT.  SOF 28-29.

- In April 2008, ADT, The Alarm Company, and Susan Brady settled the 2005 litigation.  The settlement agreement limited The Alarm Company's, Thomas Brady's and Susan Brady's ability to solicit ADT's customers within a certain geographic region.  SOF 33.

After the Colorado Litigation and the 2005 Litigation were resolved, ADT alleged that Defendants once again engaged in deceptive and intentional conduct towards it:

- After the parties settled the 2005 Litigation, The Alarm Company engaged in deceptive conduct, made representations to ADT's customers that were false,

5

approached ADT's customers under false pretenses, and "tricked" customers into switching their alarm services. SOF 34-49.

- The Alarm Company engaged in a "number of unlawful tactics," including making "fraudulent or misleading statements," telling "outright lies," and using "intimidation" to force ADT's customers to transfer their contracts to The Alarm Company. SOF 54.

- Defendants gained entry to an ADT's customer's home by suggesting that they were ADT employees. SOF 55.

- Defendants misled ADT customers by providing false statements to ADT's customers misinforming them that:

    o ADT was out of business;

    o ADT was no longer providing security services;

    o They needed to switch their business because The Alarm Company was taking over ADT's customer accounts;

    o ADT was cancelling their contracts;

    o ADT was canceling their monitoring services;

    o There was a relationship between ADT and The Alarm Company;

    o ADT had gone out of business and The Alarm Company was its successor; and

    o They had to switch their business to The Alarm Company.

SOF 56.

In the First Amended Complaint, ADT characterized Defendants' conduct as a "systemic, unlawful scheme" full of lies and deceit:

- Defendants engaged in a systemic, unlawful scheme of luring ADT's customers away from ADT through lies, intimidation, unlawful business practices, and deceit. SOF 59.

In sum, the Underlying Litigation was the third in a series of lawsuits brought by ADT. The Colorado Litigation resulted in a judgment of over $200,000, the 2005 Litigation resulted in

6

a settlement agreement that restricted solicitation of customers, and the Underlying Litigation was settled for, among other things, a payment of $2,000,000 by Defendants and a permanent injunction restricting their activities.  SOF 21-22, 32-33, 82.  ADT's allegations against Defendants describe a pattern of intentional, willful, and deceptive acts resulting in foreseeable damages for which there is no coverage under the Policies.

**E.      Coverage A**

The insuring agreement of "Coverage A Bodily Injury and Property Damage Liability" of the Commercial Liability Coverage Form ("CGL") of the Policies provides that Scottsdale has the duty to defend the insured against a suit seeking damages because of "bodily injury" or "property damage" (as those terms are defined in the Policies) to which the insurance applies:

> 1.  Insuring Agreement.
>
>     a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
>
>         . . . .
>
>     b.  This insurance applies to "bodily injury" and "property damage" only if:
>
>         (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

SOF 1-6, Exhs. A-F at Sections 1.a and 1.b of the CGL.

An "occurrence" is defined as an "accident" under the Policies.  SOF 1-6, Exhs. A-F, at Section V – Definitions, 13 of the CGL.   The Tennessee Supreme Court has interpreted the term "accident" as used in a CGL policy as "an unforeseen or unexpected event." *Travelers Indem. Co. v. Moore & Assoc.*, 216 S.W. 2d at 308.  Foreseeability is determined from the perspective of

7

the insured.[3] Because, it was foreseeable that the Defendants' intentional actions would result in the damages alleged by ADT, there is no "accident" and therefore no "occurrence" under the Policies. *Id.* 302, 305.

Paragraphs 1 through 69 of the First Amended Complaint contain allegations regarding the parties, jurisdiction, venue, and relevant facts. No negligence is alleged in those paragraphs. SOF 8 and Ex. H at ¶¶ 1-69. Instead, ADT's allegations describe a course of intentional and willful conduct engaged in by Defendants to cause Plaintiffs foreseeable harm. *Id.*

In Count I of the First Amended Complaint, ADT brings a claim for federal trademark infringement under the Lanham Act. SOF 8 and Ex. H at ¶¶ 70-76. In connection with its claim for trademark infringement, ADT characterizes Defendants' conduct as "willful and undertaken with the intent of deceiving potential and/or present ADT customers." SOF 8, 65 and Ex. H at ¶ 76. There can be no "occurrence" if Defendants' acts were willful and would foreseeably result in damages. *See, e.g., Travelers Indem. Co.*, 216 S.W.2d at 305 (defining an "accident" as an "unforeseen or unexpected event" and holding that foreseeability is determined from the insured's perspective); *Barnes v. Employers Mut. Cas. Co.*, No. 03A01-9812-CH-00403, 1999 WL 366537 (Tenn. Ct. App. June 8, 1999) ("Since the policy defines 'occurrence' as an accident, and this case involved an intentional tort instead of an accident, no 'occurrence' happened in this case. . . ."). Because ADT does not make any allegations that are within the risk covered by the Policies with respect to the Lanham Act trademark infringement claim, the duty to defend is not triggered.

---

[3]   Scottsdale is not admitting that all Defendants have insured status under all the Policies; however, for purposes of summary judgment only, it is not contesting this issue.

8

In Count II, ADT brings a claim for unfair competition under the Lanham Act. SOF 8 and Ex. 8 at ¶¶ 77-85. In connection with its unfair competition claim, ADT alleges that Defendants made misrepresentations of fact as to the nature and characteristic of Defendants' services and that Defendants' actions were willful and deliberate. SOF 8, 69 and Ex. H at ¶¶ 84-85. The damages alleged by ADT that arose from the intentional acts of Defendants are not within the covered risk because they were foreseeable – and thus, there is no "occurrence" under the Policies. *See, e.g., Travelers Indem. Co.*, 216 S.W.3d at 308 (finding that the term "accident" as used in a CGL policy means an unforeseen or unexpected event).

In Count III, ADT brings a claim for violation of Tennessee Consumer Protection Act. SOF 8, 71-77 and Ex. H at ¶¶ 86-94. ADT characterizes Defendants' conduct as a "willful and knowing intent to deceive and confuse customers." SOF 77 and Ex. H at ¶ 93. Any damages recoverable for violation of the Tennessee Consumer Protection Act would therefore be based on willful and knowing conduct, and be foreseeable, and thus are not damages that are within the covered risk.

In Count IV, ADT alleges that Defendants tortiously interfered with its contractual relationships under Tenn. Code Ann. § 47-50-109 and Tennessee common law. SOF 8, 78-79, and Ex. H at ¶¶ 95-102. ADT alleges that Defendants had knowledge of the existence of ADT's contracts with its customers and engaged in "intentional acts" to induce those customers to breach their contracts with ADT. *Id.* Damages flowing from intentional conduct are not damages within the covered risk because they are not caused by an "occurrence" as that term is defined in the Policies, and thus there is no duty to defend.

In Count V, ADT brings a claim for Trade Disparagement or Trade Liable under Tennessee common law. SOF 80-91 and Ex. H at ¶¶ 103-108. ADT predicates its claim for

Trade Disparagement and Trade Libel on allegations that Defendants' sales activities contained statements about ADT's services that were false and misleading. SOF 80-81 and Ex. H at ¶¶ at 104-105. ADT also alleges that Defendants acted with knowledge that the statements were false. SOF 54, 56-57, 59, 66-68. Therefore, no duty to defend is triggered under the Policies because the damages claimed by ADT were a foreseeable result of Defendants' false and misleading statements. Thus, there can be no "occurrence" that would trigger coverage.

In Count VI, ADT brings a claim for breach of the settlement agreement entered into in connection with the 2005 Litigation. SOF 8 and Ex. H at ¶¶ 109-117. The Policies specifically exclude coverage for an assumption of liability in a contract or agreement. SOF 1-6, Exhs. A-F at CGL Section I Coverages, Coverage A Bodily Injury and Property Damage Liability, 2. Exclusions, b. Contractual Liability. ("This insurance does not apply to: 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of assumption of liability in a contact or agreement."). To the extent that damages are sought for breach of contract, there can be duty to defend because of the exclusion under the Policies for coverage for damages arising from contractual liability.

**F.     Coverage B**

The Coverage B portion of the CGL provides that Scottsdale has a duty to defend the insured against any suits seeking damages because of "Personal and Advertising Injury" (as that term is defined in the Policies), to which the insurance applies. The definition of "Personal and Advertising Injury" includes an injury arising out of:

> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services. . . .

SOF 1-6, Exhs. A-F at CGL Section V - Definitions 14.d.

10

While there are numerous allegations that the Defendants published misrepresentations concerning ADT, there are also numerous allegations that the Defendants' actions in making those misrepresentations were intentional, deliberate, and willful.  SOF 54, 56, 59, 61, 63, 66-68, 75.  The Policies exclude coverage for injury arising out of statements made with knowledge of their falsity.  SOF 1-6, Ex. A-F at Coverage B – Personal and Advertising Injury Liability, 2. Exclusions, b. Material Published with Knowledge of Falsity ("This insurance does not apply to: 'Personal and advertising injury arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.").  Thus, there is no duty to defend or indemnify under Coverage B because Coverage B does not apply to injury arising from statements made with knowledge of this falsity.

The Policies also exclude coverage for injury caused with knowledge that an act would violate the rights of another.  SOF 1-6, Exhs A-F at Coverage B - Personal and Advertising Injury Liability, 2. Exclusions, a. Knowing Violation of Rights of Another ("This insurance does not apply to: 'Personal and Advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'").  As discussed above, ADT's allegations describe a course of intentional, deliberate, and willful misconduct.  SOF 29, 31, 34-49, 54-56, 59, 61, 64, 68, 70-71, 73, 75-80.  Thus, any damages caused by Defendants' acts would be excluded from coverage because they would have been caused with knowledge that they would violate the rights of another.

Coverage B excludes coverage for personal and advertising injury for which the Insured assumed liability in a contract or arising out of a breach of contract.  SOF 1-6, Exhs. A-F at Coverage B - Personal and Advertising Injury Liability, 2. Exclusions, f. Breach of Contract ("This insurance does not apply to: 'Personal and advertising injury' arising out of a breach of

11

contract . . . ."). To the extent ADT seeks damages for breach of contract (Count VI), no duty to defend could be triggered by those allegations.

Coverage B excludes coverage for personal and advertising injury arising out of the infringement of copyright, patent, trademark, trade secret, or other intellectual property rights. SOF 1-6, Exhs. A-F at Coverage B - Personal and Advertising Injury Liability, 2. Exclusions, i. Infringement of Copyright, Patent, Trademark or Trade Secret ("This insurance does not apply to: 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."). This provision excludes coverage for damages for trademark infringement under the Lanham Act (Count I). Thus, no duty to defend could be triggered by those allegations.

### G.   Errors and Omissions Coverage

The Errors and Omissions Coverage Part of the Policies provides that Scottsdale has the duty to defend the Insured against any suit seeking damages as a result of an "error or omission" (as that term is defined in the Policies) to which the insurance applies. SOF 1-6, Exhs. A-F at Errors and Omissions Coverage Part, 1. Insuring Agreement, a.

An "error or omission" is defined, in part, by the Policies to mean any "negligent act, error or omission . . . ." SOF 1-6, Exhs. A-F at Errors and Omissions Coverage Part, Sections IV – Definitions, 4. ADT does not use the word "negligent" in the First Amended Complaint and makes numerous allegations of intentional and willful conduct engaged in by Defendants. SOF 29, 31, 34-49, 54, 56, 59, 61, 63, 66-68, 75. Based on the allegations of the First Amended Complaint, there is no duty to defend Defendants under the Errors and Omissions part of the Policies because there are no allegations that fall within the covered risk.

12

In addition, the Errors and Omissions part does not apply to errors or omissions for damages occurring from the assumption of liability in a contract or agreement. SOF 1-6, Exhs. A-F at Errors and Omissions Coverage Part, 2. Exclusions, a ("This insurance does not apply to: 'Errors and omissions' for which the insured is obligated to pay 'damages' by reason of the assumption of liability in a contract or agreement."). Thus, there is no coverage for damages arising from breach of contract and therefore no duty to defend a breach of contract claim (Count VI).

Coverage is also excluded for injury arising out of dishonest, fraudulent, or malicious acts. SOF 1-6, Exhs. A-F at Errors and Omissions Coverage Part, 2. Exclusions, d ("This insurance does not apply to: Injury arising out of a dishonest, fraudulent, malicious or criminal act by any insured."). In Count I, ADT alleges that Defendants' acts were undertaken with the intent of deceiving potential customers. SOF 65 and Ex. H. at ¶ 76. In Count II, ADT alleges that Defendants' acts constituted willful, deliberate, false and misleading representations of fact. SOF 68. In Count III, Plaintiffs allege that Defendants' conduct was a willful and knowing attempt to deceive and confuse customers. SOF 77. In Count IV, ADT alleges that Defendants acted intentionally to induce ADT's customers to breach their contracts by making misrepresentations to those customers. SOF 78-79. In Count V, ADT alleges that Defendants made false and misleading statements. SOF 80-81. Thus, there can be no duty to defend with respect to these claims because there are no allegations that fall within the covered risk. SOF 8 and Ex. H at ¶¶ 105-07.

### H. No Duty to Indemnify

#### 1. Blanket Rule

The "blanket rule" provides that when a court determines there is no duty to defend, it must also determine there is no duty to indemnify. *Auto-Owners Ins. Co. v. England*, No. 3:10-

13

cv-118, 2013 WL 3423817, at *2 (E. D. Tenn. July 8, 2013); *Cincinnati Ins. Co. v. Gran Pointe, LLC,* No. 1:05-CV-161, 2006 WL 1806014, at *9 (E. D. Tenn. June 29, 2006); *see also Standard Const. Co., Inc. v. Maryland Cas. Co.*, No. 01-2006V, 2002 WL 1477886, at *12 (W. D. Tenn. 2002). It is well-established under Tennessee law that an insurer's duty to defend is broader than its duty to indemnify. *Travelers Indem. Co. of Am. v. Moore & Assoc., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007); *St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994). When the underlying allegations do not fall within the parameters of the policy, there can be no duty to indemnify. *Interstate*, 2013 WL 1335120 at *7 (citing *Cincinnati Ins. Co.*, 2006 WL 1806014 at *9)). Thus, "if there is no duty to defend, there is no duty to indemnify" and summary judgment is appropriate. *Standard Const. Co., Inc.*, 2002 WL 1477886, at *12.

### 2.     Application and Rationale of Blanket Rule

Federal courts interpreting Tennessee law have cited the "blanket rule" as a sound basis for granting summary judgment on the duty to indemnify when no duty to defend exists. *Auto-Owners Ins. Co.*, 2013 WL 3423817, at *2; *Cincinnati Ins. Co., LLC*, 2006 WL 1806014, at *9; *Interstate Packaging Co.*, 2013 WL 1335120 at *8. Indeed, every federal district court in Tennessee has upheld the applicability of the blanket rule. *Interstate Packaging Co.*, 2013 WL 1335120 at *6 (Middle District affirming summary judgment on a motion to reconsider finding that the application of the blanket rule was not a clear error of law); *Cincinnati Ins. Co.*, 2006 WL 1806014, at *9 (Eastern District granting summary judgment on insurer's duty to indemnify after finding insurer had no duty to defend); *Standard Const. Co., Inc.*, 2002 WL 1477886, at *12 (Western District holding that "[i]t logically follows . . . that if there is no duty to defend, there is no duty to indemnify").

The case of *Cincinnati Ins. Co. v. Gran Pointe, LLC,* No. 1:05-CV-161, 2006 WL 1806014, at *9 (E. D. Tenn. June 29, 2006) demonstrates how courts summarily determine an

insurer's duty to indemnify via application of the blanket rule. In *Cincinnati*, various condominium owners initially filed suit against Grand Point, LLC, a condominium builder involved with the construction of the owners' condominiums. *Cincinnati Ins. Co.*, 2006 WL 1806014 at *2. Subsequently, Grand Point and other builders associated with the construction purchased a commercial umbrella policy from Cincinnati Insurance Company. *Id.* After a second suit was filed by the condominium owners' association, Cincinnati filed a declaratory action seeking a declaration that it had no duty to defend or indemnify Grand Point or the other builders. *Id.* at *4. The Court found that the allegations in the Complaints did not trigger coverage under the parameters of the policy and Cincinnati had no duty to defend. *Id.* at *9. The Court then found that "even if the allegations were proven true, they would not trigger a duty to indemnify" and thus summary judgment regarding the duty to indemnify was appropriate. *Id.* at *9.

In *Interstate Packaging Co. v. Century Indem. Co.,* No 3:11-cv-00589, 2012 WL 974676, at *7 (M. D. Tenn. 2012), the Middle District of Tennessee affirmed application of the blanket rule in three separate rulings. *Interstate*, 2012 WL 974676, at *7; 2013 WL 1335120 at *7; 2013 WL 5375246 at *5. The Court first granted summary judgment in favor of Century Indemnification Company, applying the blanket rule and finding that because Century had no duty to defend, it likewise had no duty to indemnify. *Interstate*, 2012 WL 974676, at *7. Upon a rehearing pursuant to the insured's motion to reconsider, the Court affirmed application of the blanket rule and the grant of summary judgment. *Interstate*, 2013 WL 1335120 at *7. Although the Court criticized the rationale of the blanket rule in dicta, it ultimately held that it could not find that application of the blanket rule was clear error of law. *Id.* at *8. The Court in *Interstate* subsequently granted summary judgment for American Casualty Company − a separate insurer

15

defendant – and upheld application of the blanket rule. *Interstate*, 2013 WL 5375246 at *5. Despite the Court's criticism of the blanket rule, the Court affirmed application of the blanket rule for the third time and granted summary judgment in favor of American Casualty. *Id.* Citing to the summary judgment ruling in favor of Century and the denial of the motion to reconsider, the Court "decline[d] to reconsider the applicability of the blanket rule a second time," having already "definitively rejected" plaintiff's arguments against its application. *Id.*

Thus, because there is no duty to defend, as a matter of law there is no duty to indemnify.

### J.     Conclusion

The allegations of the First Amended Complaint do not trigger a duty to defend. Instead, they paint a picture of a "systemic, unlawful scheme" engaged by Defendants to lure away ADT's customers through "lies, intimidation, unlawful business practices, and deceit." SOF 59. The Policies do not provide coverage for the foreseeable injuries arising from such behavior.

If the allegations of the First Amended Complaint do not fall within the covered risk, then proving the allegations true will not change the fact that they do not fall within the covered risk. Thus, there can be no duty to indemnify if there is no duty to defend.

Scottsdale therefore requests that the Court grant its motion for summary judgment and declare that it has no duty to defend or indemnify Defendants.

Respectfully submitted,

/s/ Shea Sisk Wellford
Shea Sisk Wellford (TN B.P.R. No. 16947)
Joshua L. Baker (TN B.P.R. No. 31960)
**Martin, Tate, Morrow & Marston, P.C.**
6410 Poplar Avenue, Suite 1000
Memphis, TN  38119-4839
Telephone:  (901) 522-9000
Facsimile:  (901) 527-3746
sheawellford@martintate.com
jbaker@martintate.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been sent by electronic means via the Court's electronic filing system to all counsel of record in this case this 30th day of January, 2015.

/s/ Shea Sisk Wellford

17